**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

KIMBERLY LACHUT,

    Plaintiff,

    v.

CARBONITE, INC., STEVE MUNFORD,
LINDA CONNLY, SCOTT DANIELS,
DAVID FRIEND, CHARLES KANE,
TODD KRASNOW, and MARINA LEVINSON,

    Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND
JURY DEMAND**

---

Plaintiff Kimberly Lachut ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Carbonite, Inc. ("Carbonite" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R.

§ 240.14d-9, in connection with Open Text Corporation's ("OpenText") and Coral Merger Sub Inc.'s ("Merger Sub") proposed acquisition of Carbonite (the "Proposed Transaction").[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company, through its entities, maintains operations in this District and/or Defendants conduct business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Carbonite common stock.

7. Defendant Carbonite, together with its subsidiaries, provides backup, disaster recovery, high availability, and workload migration technology solutions in the United States. The Company is incorporated in Delaware and maintains offices, through its entities, in Broomfield,

---

[1] Merger Sub is a wholly-owned subsidiary of OpenText.

Colorado. The Company's common stock trades on the Nasdaq Global Market under the ticker symbol, "CARB."

8. Defendant Steve Munford ("Munford") is the Interim Chief Executive Officer ("CEO"), President, and Executive Chairman of the Board of the Company.

9. Defendant Linda Connly ("Connly") is a director of the Company.

10. Defendant Scott Daniels ("Daniels") is a director of the Company.

11. Defendant David Friend ("Friend") is a director and co-founder of the Company.

12. Defendant Charles Kane ("Kane") is a director of the Company.

13. Defendant Todd Krasnow ("Krasnow") is a director of the Company.

14. Defendant Marina Levinson ("Levinson") is a director of the Company.

15. Defendants Munford, Connly, Daniels, Friend, Kane, Krasnow, and Levinson are collectively referred to herein as the "Individual Defendants."

16. Defendants Carbonite and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On November 11, 2019, Carbonite issued a press release announcing that it had entered into a definitive merger agreement with OpenText whereby OpenText would commence a cash tender offer to purchase all outstanding shares of Carbonite common stock for $23.00 per share in cash. The press release states, in pertinent part:

**Carbonite To Be Acquired by OpenText for $23.00 Per Share**

*Transaction Follows Comprehensive Process Run by Board to Maximize Value for Shareholders*

*Represents 78% Premium to Carbonite's Unaffected Stock Price on September 5, 2019*

*Announces Third Quarter 2019 Financial Results*

November 11, 2019 08:00 AM Eastern Standard Time

BOSTON--(BUSINESS WIRE)--Carbonite, Inc. (NASDAQ: CARB), a global leader in data protection and cybersecurity, today announced that it has entered into a definitive agreement to be acquired by OpenText$^{TM}$ (NASDAQ: OTEX, TSX:OTEX), a market leader in Enterprise Information Management software and solutions, for $23.00 per Carbonite share in cash. The transaction values Carbonite at an enterprise value of approximately $1.42 billion and represents a 78% premium to Carbonite's unaffected closing stock price on September 5, 2019, the last trading day before a media report was published speculating about a potential sale process.

\* \* \*

Munford continued, "Carbonite has expanded its solutions to become a leader in cyber resiliency. We have grown through both organic and inorganic opportunities over the years, enhancing our routes to market, diversifying our customer base, and assembling a talented workforce, while adding meaningful scale. Joining with OpenText is an exciting next step for Carbonite."

OpenText is a leader in Enterprise Information Management (EIM), both on-premises and for cloud services, offering the only complete solution for EIM with a comprehensive view of all the information within an organization. OpenText operates in 40 countries, providing a tested platform for growth and new sales opportunities.

The transaction is subject to customary closing conditions, including the tender of a majority of the outstanding shares of Carbonite common stock and regulatory approvals.

J.P. Morgan Securities LLC acted as financial advisor to Carbonite, and Skadden, Arps, Slate, Meagher & Flom LLP acted as legal advisor.

18. On November 25, 2019, Carbonite filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

19. The Solicitation Statement, which recommends that Carbonite shareholders tender their shares to OpenText in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Carbonite's financial projections; (ii) the financial analyses performed by Carbonite's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving J.P. Morgan.

20. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Reasons for the Recommendation; (ii) Background of the Offer and the Merger; (iii) Certain Financial Projections; and (iv) Opinion of Carbonite's Financial Advisor.

21. The tender offer by Merger Sub, a wholly-owned subsidiary of OpenText, is set to expire one minute after 11:59 P.M. (ET) on December 23, 2019 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Carbonite's Financial Projections

22. The Solicitation Statement omits material information concerning Carbonite's financial projections.

23. The Solicitation Statement provides that:

> [I]n anticipation of entering into an acquisition agreement for Webroot, Carbonite's management prepared non-public, unaudited, risk-adjusted prospective financial information for calendar years ending December 31, 2018 through December 31, 2022, reflecting the projected financial results of Carbonite and Webroot on a pro forma combined basis, assuming the Webroot acquisition occurred on January 1, 2018 (the "*February Forecasts*"). Subsequently, in anticipation of commencing outreach to third parties concerning a potential strategic transaction involving Carbonite, at the August 10, 2019 Carbonite Board meeting, the Carbonite Board instructed Carbonite's management to update the February Forecasts for calendar years ending December 31, 2018 through December 31, 2022, which updated forecasts were then disclosed to and adopted by the Carbonite Board on September 9, 2019 (the "*September Forecasts*", and together with the February Forecasts, the "*Forecasts*").

24. The Solicitation Statement provides summaries of each of the *Forecasts*.

25. The Solicitation Statement, however, fails to disclose the following concerning the *Forecasts*: (1) all line items used to calculate (i) Total Adjusted EBITDA incl. Synergies, (ii) Total Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

26. When a company discloses non-GAAP financial metrics in a Solicitation Statement that was relied upon by its board in recommending that shareholders tender their shares pursuant to a tender offer, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more

reliable GAAP information.[2]

27. The disclosure of Carbonite's projected financial information is material because it would provide Carbonite shareholders with a basis to project future financial performance of Carbonite and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares to OpenText.

28. Accordingly, in order to cure the materially misleading nature of the *Forecasts*, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Solicitation Statement not misleading.

29. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Carbonite shareholders.

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Dec. 10, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

## 2. Material Omissions Concerning J.P. Morgan's Financial Analyses

30. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by J.P. Morgan.

31. The Solicitation Statement fails to disclose the following concerning J.P. Morgan's "*Discounted Cash Flow Analysis*": (1) all line items used to calculate the unlevered free cash flows that Carbonite is expected to generate beginning with the fourth quarter of 2019 through the end of calendar year 2022; (2) the range of terminal values for Carbonite at December 31, 2022; (3) the individual inputs and assumptions underlying the (i) discount rate range of 9.0% to 11.0%, and (ii) perpetual growth rates ranging from 0.0% to 1.0%; and (4) the number of fully diluted shares of Carbonite common stock outstanding as of September 30, 2019.

32. The Solicitation Statement fails to disclose the following concerning J.P. Morgan's "*Analyst Price Targets*" analysis: (1) the individual price targets for Carbonite observed by J.P. Morgan in the analysis; and (2) the sources of those price targets.

33. The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan in rendering its purported fairness opinion must be fairly disclosed to Carbonite shareholders. The description of J.P. Morgan's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Carbonite shareholders are unable to fully understand J.P. Morgan's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on it in determining whether to tender their shares to OpenText. This omitted information, if disclosed, would significantly alter the total mix of information available to Carbonite shareholders.

## 3. Material Omissions Concerning J.P. Morgan's Potential Conflicts of Interest

34. The Solicitation Statement omits material information concerning potential

conflicts of interest involving J.P. Morgan.

35. According to the Solicitation Statement, on February 14, 2019, Party A submitted an unsolicited non-binding proposal to acquire Carbonite at a price of $33-$35 per share in cash (the "February 14 Proposal"). Then, on March 16, 2019, Party A submitted a revised non-binding proposal to acquire Carbonite at $32-$34 per share in cash (the "March 16 Proposal"). In connection with the March 16 Proposal, the Company engaged "Bank A" to advise it concerning the March 16 Proposal and to prepare preliminary valuation materials due to Bank A's "relationship and familiarity with Carbonite." The Board ultimately determined that the March 16 Proposal did not present a compelling opportunity for Carbonite's shareholders.

36. In June 2019, OpenText expressed an interest in entering into a possible strategic transaction with Carbonite.

37. On July 25, 2019, Carbonite announced its second quarter 2019 financial results, lowering full year 2019 guidance of GAAP revenue from a range of $457-$471 million down to $443.5-$448.5 million. Carbonite also announced that Mohamad Ali resigned as Carbonite's President, CEO and as a member of its Board to "pursue other professional opportunities[.]"

38. On this news, Carbonite's stock price fell $5.89 per share or over 24% to close at $18.01 per share on July 26, 2019.

39. On July 26, 2019, representatives of Lazard Frères & Co. LLC, acting on behalf of OpenText, contacted Carbonite's Chief Financial Officer ("CFO") to express that OpenText was interested in acquiring Carbonite.

40. On July 29, 2019 and August 1, 2019, respectively, a representative from the Company reached out to J.P. Morgan and Bank A to request that each meet with Carbonite management and possibly Board members "to provide their perspective on the recent drop in stock

price, management transition and inbound interest from potential counterparties."

41. On August 9, 2019, representatives of J.P. Morgan and Bank A separately presented materials to the Board regarding "potential responses to Carbonite's recent drop in stock price, management transition and inbound interest from potential counterparties and certain considerations in the event Carbonite decided to pursue a strategic review process."

42. On August 10, 2019, the Board held a meeting and approved the engagement of J.P. Morgan as Carbonite's financial advisor in connection with the exploration of a potential transaction.

43. The Solicitation Statement, however, fails to disclose why J.P. Morgan was selected as the Company's financial advisor over Bank A, particularly in light of (i) Bank A's "relationship and familiarity with Carbonite" and experience handling the March 16 Proposal; and (ii) J.P. Morgan's potential conflict of interest in working for OpenText, including in October 2019, when J.P. Morgan and its affiliates served as joint lead arranger and joint bookrunner on OpenText's refinancing of its revolving credit facility, earning approximately $1.1 million in fees while advising Carbonite on its Proposed Transaction with OpenText.[3]

44. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

---

[3] According to the Solicitation Statement, J.P. Morgan did not disclose its previous and existing relationship with OpenText, among others, until it exchanged signature pages on November 4, 2019 with Carbonite concerning J.P. Morgan's October 31, 2019 engagement letter. This was well beyond June and July of 2019 when Carbonite knew or should have known that OpenText was interested in entering into a strategic transaction with the Company.

45. The omission of the above-referenced information renders the Solicitation Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Carbonite shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

46. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

48. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

49. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

50. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to

tender their shares in connection with the Proposed Transaction.

51. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

52. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

53. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
**Against All Defendants**

54. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

56. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

57. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

12

58. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

59. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

60. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

61. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

62. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

### COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

63. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

65. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

67. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

68. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

   D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

   E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 10, 2019      Respectfully submitted,

            **HALPER SADEH LLP**

            /s/ Daniel Sadeh
            Daniel Sadeh, Esq.
            375 Park Avenue, Suite 2607
            New York, NY 10152
            Telephone: (212) 763-0060
            Facsimile: (646) 776-2600
            Email: sadeh@halpersadeh.com

            *Counsel for Plaintiff*